EDWARDS & WIFE, Respondents, v. WELTON *et al.*, Appellants.

1. One of several *cestuis que trust* can not single out a portion of the trust property and allege an exclusive right thereto, and assert that right in an action for its possession.
2. Where trust funds are misapplied, the *cestui que trust* may follow the property acquired therewith, and assert the trust as against any one taking with notice.

### Appeal from Clay Circuit Court.

This was a suit instituted by William Edwards and Elizabeth Edwards his wife, against Solomon Welton, Ivy Welton and Elvy Atkinson.   Plaintiffs state in their petition in substance that one Unice Harness, then a resident of the state of Virginia, made her last will and testament, which was ad-

mitted to probate in the year 1823; that in said will there is the following bequest: "I give to my daughter Elizabeth Welton five hundred dollars, the price of my negro boy Phil, which my son Adam Harness is to have, and pay in two years from my death, and to be laid out in negro girls by my executors for my daughter Elizabeth Welton and her daughters forever;" that the said sum of $500 never was laid out by the executors in the purchase of the negro girls for the said Elizabeth Welton and her daughters, as directed by the will; that said sum was paid by the executors to Michael Welton, the husband of Elizabeth, to be by him laid out in the purchase of negro girls for the said Elizabeth and her daughters according to the terms of said will; that said Michael received the said sum under an express agreement with the executors that he would so lay it out; that said Michael did purchase with said $500, or a part of it, a negro girl named ·Tamar, for his wife and daughters; that at the death of said Unice Harness, the said Elizabeth Welton had four daughters, to-wit.: Elizabeth, (wife of William Edwards, and plaintiff in this suit), Ivy Welton, and Elvy Atkinson (who, with Solomon Welton, are defendants in this suit), and Hannah Welton; that said Hannah died about eight, and Elizabeth Welton, the mother, about six years ago; that at the death of the said Elizabeth Welton, wife of Michael Welton, the said negro slave Tamar, and all her increase, became the sole and absolute property of plaintiffs and the said Elvy Atkinson and Ivy Welton, two of the defendants; that plaintiffs became entitled to one undivided third of said slave Tamar and her increase; that on the 24th day of April, 1842, the said Michael Welton made and entered into an instrument of writing between himself and the said Hannah Welton, Ivy Welton, Elvy Atkinson (then Elvy Welton) and Solomon Welton, the son of said Michael, and one of the defendants, in which, after reciting the bequest above set forth, and that he had received the said sum of $500, and had appropriated it to his own use in the purchase of slaves and otherwise, he conveys certain negroes, named Jerry, Eliza, Essex, Ellen,

Lewis and Martha, all children of Tamar, absolutely to the said Hannah, Ivy, Elvy and Solomon ; that the said Hannah, Ivy, Elvy and Solomon had full notice of the provisions of the will above set forth ; that they accepted the conveyance for the purpose of defrauding the plaintiffs out of their legitimate rights under said will ; that Michael Welton died in 1855 insolvent ; that they, plaintiffs, have never received the said Tamar or any of her children, or any of the money they or any of them sold for ; that defendants sold two of said slaves mentioned in the bill of sale above mentioned, to-wit : Essex and Ellen, both children of Tamar, Essex for $300, Ellen for $210, and appropriated the proceeds ; that the remaining slaves—Jerry, Eliza, Lewis and Martha—have been divided between defendants—Jerry, now worth $1200, being received by the said Solomon, Eliza by Ivy, and Martha by Elvy ; that plaintiffs, with Elvy and Ivy, were each entitled to one-third of the proceeds of the sale of Essex and Ellen ; that plaintiffs have received none of the proceeds ; that on the contrary the said Solomon received one-third of said proceeds, to-wit, $170, which rightfully and legally belongs to plaintiffs ; that the said Elvy and Ivy have received each one-third of the remaining negroes after the sale of the said Essex and Ellen ; that they each received one-third of said proceeds of the sale of Essex and Ellen ; that the negro boy Jerry, who legally and properly belongs to plaintiffs, was received by Solomon Welton, and is still in his possession. Plaintiffs ask judgment against the said Solomon for the sum of $170 and interest, that being the amount received by him from the proceeds of the sale of Ellen and Essex ; and a judgment against him, the said Solomon, for the possession and delivery of the said negro slave Jerry, and in default of delivery of said slave Jerry to plaintiffs, a judgment for the sum of $1200, the value of said slave. Plaintiffs also ask judgment for $1500, the alleged value to defendant Solomon of the services of the said slave Jerry.

At the trial evidence was adduced in support of the allegations of the petition. The instructions given are numerous.

25—VOL. XXV.

It is deemed unnecessary to set them forth. The jury found a verdict for plaintiffs against Solomon Welton, and found for them $1100, the value of the slave Jerry, and $500 for the hire of Jerry ; amounting in all to $1500. The jury found for defendants Ivy Welton and Elvy Atkinson. Judgment was rendered accordingly.

*Morrow* and *Gardenhire*, for appellants.

I. Plaintiffs have sued the wrong party. The executors of Harness were the proper parties to be sued. The executors of Harness were guilty of breach of trust, if any one was, and they are undoubtedly liable for that breach, and there is no pretence that they and their securities are insolvent. Even if Harness' executors were insolvent, it would not make the appellant liable. Although the court may hold that the filing of a motion in arrest supersedes a motion for a new trial—which we deny to be the law of the land—it does not affect the question as to who are proper parties to the suit ; if the appellees have a judgment against a party who is not responsible to them, the judgment ought to have been arrested.

II. The instructions given for plaintiffs are erroneous, and those asked by defendants ought to have been given.

*Hovey*, for respondents.

I. The papers offered in evidence by plaintiffs below were competent, as were the statements of Michael Welton before the making of bill of sale of the slaves. (See 3 Vesey, 696, 707 ; Foster v. Hale, 4 Kent, Com. 305 ; Lewin on Trusts, 30.) The statements and admissions of Michael Welton, offered to be proven by appellants, were incompetent, because they were in no way explanatory of his act in making the deed of gift or sale to defendants.

II. The instructions as to the admissions by defendant Solomon's answer are warranted by the pleadings.

III. The general instructions given for the plaintiffs are the law of this case. First—Because a trust was created by the will, and the fund, being money, could not be identified

in kind, but must be traced to such property in the hands of the trustee as answered the description of that in which the trust fund was to be invested. Second—The second and third instructions asked by plaintiffs are well predicated upon the recitals in Michael Welton's deed to defendants as a trace of the fund, coupled with the will creating the fund. Third—Elizabeth Edwards' share of the proceeds of that fund is the only matter in controversy, and if he had her share and no more of it, then being hers she is entitled to it and the value of its use. Fourth—The statute of limitation of action does not run against minors nor married women during these disabilities.

IV. That the instructions asked by defendant Solomon Welton, and refused by the court below, were properly refused. First—Because the court did give other instructions embracing all the points contended for by the defendant below, and even far too liberal towards him. Secondly—No demand was necessary. The recitals in his father's conveyance under which he submitted to and claimed a share in the division of the slaves, was notice to him of the daughters' title as against himself. Thirdly—Solomon Welton was presumed to know the recitals in the conveyance under which he held the slave Jerry. Fourthly—No agreement on the part of Michael Welton was necessary.

V. The motion in arrest was properly overruled. First—Because by the petition Elizabeth Edwards was shown to have been wronged, and that Solomon Welton had wronged her, and she thereby sought redress and general relief. Secondly—By the combination of law and equity in the second count, the jury had a right under the instructions of the court to find for or against any of the parties for any thing and for any amount that was within the wrong complained of or the right sought to be enforced.

VI. The evidence shows that the slave Tamar was bought with the trust fund, and therefore she and her increase went to the daughters on the death of Elizabeth Welton, their mother.

SCOTT, Judge, delivered the opinion of the court.

This is an attempt by an action in the nature of trover to execute a constructive trust. The prayer of the petition is for the possession and delivery of the slave, and in default of delivery a judgment for his value and his hire. In this aspect of the case, if the facts warranted it, the plea of the statute of limitations was a defence to the action. That the plaintiff Elizabeth was a married woman does not prevent the running of the statute, if she was of age when the action accrued and afterwards married. The disabilities specified in the statute are not cumulative. If a plaintiff, when a cause of action accrues, is laboring under several disabilities, they must all be removed before he is compelled to sue ; but if he is subject to one or more disabilities when the cause of action arises, and afterwards another disability supervenes, the suit must be brought within the time limited for the first disability or disabilities. (Keeton v. Keeton, 20 Mo. 530.)

It is obvious that this action has been misconceived, or at least that the plaintiffs have misconceived their rights and have instituted their action in such a way as will not secure the adjustment of the trust by one suit. The trust is a joint one. One of its beneficiaries has no sole or exclusive right to any particular part or subject of the trust. Each beneficiary has a right in every part ; and this is the first instance which has fallen under our notice in which one of several joint *cestuis que trust* has been permitted to single out one part of the trust fund, assert an exclusive right to it, and enforce that right by an action in the nature of trover. There is nothing whatever in the record which shows that this proceeding has any sanction in the approbation of the other parties who are interested. The instructions, given at the instance of the defendants other than Solomon Welton, do not help the matter. According to their own showing the plaintiffs were not entitled to more than one-fifth of the value and hire of the slaves in controversy. This fifth would be exclusive of the interest to which they have a right as one of the

heirs of the mother and sister. As the plaintiffs have been excluded from all participation in a joint trust in which they have an interest, it is obvious that their rights can only be enforced in an action in which the whole trust fund is sought to be adjusted. The other *cestuis que trust* being made defendants, the portions they have received on the taking of an account before a commissioner would be taken into consideration, and the entire property divided or sold so as to do full justice between the parties. The parties who are *sui juris* may arrange matters by consent, but that consent, to avoid future litigation, should be made apparent by the record.

Justice has not been done by the judgment rendered in the cause. The money by the will was to be laid out in negro girls for the "mother and her daughters." These words would constitute the mother and her daughters tenants in common, and upon the death of the mother her share—one-fifth, as there were four daughters—would be distributed among all her heirs. So, on the death of Hannah, her interest would devolve on her mother and her sisters and brothers. All these interests have been overlooked, and the judgment is based on the pretension that the rights of Hannah and her mother survived to the remaining *cestuis que trust*.

The defendant Solomon Welton, taking under the deed, is estopped from controverting its terms. The deed recites that the trust money was appropriated to the purchase of slaves. As only two slaves were purchased, of whom Tamar, the mother of the slave in controversy, was one, it is obvious that he is subject to the trust. The property purchased with the trust money, whether it was of the kind required or not, would be impressed with the trust, if the *cestuis que trust* elected so to consider it.

Solomon Welton, being a volunteer, stands in no better situation than his father, and can not insist on the want of notice. Although the executors under the will are liable to the *cestuis que trust* for the misapplication of the trust fund, if they see proper to pursue them, yet that does not prevent those interested from following the property acquired by

means of the trust fund into whosesoever hands it may be affected with notice of the trust.

Judge Ryland concurring, judgment reversed, and cause remanded; Judge Leonard absent.